558 F.2d 353
 OHIO RIVER COLLIERIES, INCORPORATED, Petitioner,
v.
SECRETARY OF LABOR, U. S. DEPARTMENT OF LABOR and Benefits
Review Board, U. S. Department of Labor and Director, Office
of Workers' Compensation Programs, U. S. Department of Labor
and Richard A. Givens, Respondents.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
OHIO RIVER COLLIERIES, INCORPORATED, Respondent.
 Nos. 76-1079, 76-1343.
 United States Court of Appeals,
Sixth Circuit.
 Argued and Submitted April 19, 1977.
Decided July 1, 1977.
 
 John W. Edwards, Jeffrey W. Hutson, Lane, Alton & Horst, Columbus, Ohio, for petitioner.
 George M. Lilly, Ronald E. Meisburg, Washington, D. C., for respondents.
 Before PHILLIPS, Chief Judge, and LIVELY and ENGEL, Circuit Judges.
 LIVELY, Circuit Judge.
 
 
 1
 This case is before the court on two petitions for review of a decision of the Benefits Review Board of the Department of Labor (BRB). In No. 76-1343 the Director, Office of Workers' Compensation Programs, Department of Labor (Director) seeks review of a decision of the BRB awarding benefits to Richard A. Givens under the Black Lung Benefits Act of 1972, 30 U.S.C. § 901 et seq. (1970 Supp. II). In No. 76-1079 Ohio River Collieries, Incorporated (ORC), a former employer of Givens, seeks review of an order of the BRB denying its motion for leave to file a cross-appeal from the decision and order of the hearing officer before whom the Givens claim was heard.
 
 
 2
 The petition of the Director presents a question of first impression in this court. Givens filed his application for benefits with the Department of Labor on August 14, 1973. His application revealed that he had worked for several coal operators and that his most recent coal mine employer had been ORC, from 1950 to 1956. A hearing was conducted in which the claimant Givens, ORC and the Director were all represented by counsel. The hearing officer found that Givens, who had worked for more than 15 years in the mines and was 84 years old at the time of the hearing, suffers from a totally disabling respiratory or pulmonary impairment. Accordingly, Givens was held to be entitled to a rebuttable presumption that he is totally disabled due to pneumoconiosis. 30 U.S.C. § 921(c)(4) (1970 Supp. II). The hearing officer further found that the presumption had not been rebutted. The hearing officer held that ORC could not be held liable for payment of benefits to Givens and further concluded that the Secretary of Labor is liable for the benefit payments to Givens throughout his period of disability. The BRB affirmed the decision of the hearing officer in all respects.
 
 
 3
 The general statutory scheme for dealing with the black lung problem provided federal benefits for miners who were already disabled from pneumoconiosis at the time the legislation was enacted in 1969. 30 U.S.C. §§ 901-924 (1970). These benefits were to be obtained by filing under part B of Subchapter IV of the Act prior to January 1, 1973. Those who filed on or after January 1, 1973 and qualified for benefits presumably miners who had recently become disabled were to be compensated pursuant to part C of Subchapter IV. 30 U.S.C. §§ 931-936. Under part C liability was shifted to coal operator-employers of claimants, and administration of the program was transferred from the Secretary of Health, Education and Welfare to the Secretary of Labor. It was contemplated that the states would provide coverage through workmen's compensation. Where such coverage did not meet the requirements of the Act, claims would be processed under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq.
 
 
 4
 The 1969 Act was extensively amended in 1972. The period of federal liability was extended by amendment which made part B applicable to all claims filed on or before December 31, 1973 and part C applicable to claims filed after that date. The amendments added a new section to the Act, codified as 30 U.S.C. § 925 (1970 Supp. II), which established the procedure for determination of claims during the "transition period" from July 1, 1973 to December 31, 1973, as follows:
 
 
 5
 (a) Notwithstanding any other provision in this subchapter, for the purpose of assuring the uninterrupted receipt of benefits by claimants at such time as responsibility for administration of the benefits program is assumed by either a State workmen's compensation agency or the Secretary of Labor, any claim for benefits under this part filed during the period from July 1, 1973 to December 31, 1973, shall be considered and determined in accordance with the procedures of this section. With respect to any such claim
 
 
 6
 (1) Such claim shall be determined and, where appropriate under this part or section 934 of this title, benefits shall be paid with respect to such claim by the Secretary of Labor.
 
 
 7
 (2) The manner and place of filing such claim shall be in accordance with regulations issued jointly by the Secretary of Health, Education, and Welfare and the Secretary of Labor, which regulations shall provide, among other things, that such claims may be filed in district offices of the Social Security Administration and thereafter transferred to the jurisdiction of the Department of Labor for further consideration.
 
 
 8
 (3) The Secretary of Labor shall promptly notify any operator who he believes, on the basis of information contained in the claim, or any other information available to him, may be liable to pay benefits to the claimant under part C of this subchapter for any month after December 31, 1973.
 
 
 9
 (4) In determining such claims, the Secretary of Labor shall, to the extent appropriate, follow the procedures described in subsections (b), (c), and (d) of section 919 of Title 33.
 
 
 10
 (5) Any operator who has been notified of the pendency of a claim under paragraph 4 of this subsection shall be bound by the determination of the Secretary of Labor on such claim as if the claim had been filed pursuant to part C of this subchapter and section 932 of this title had been applicable to such operator. Nothing in this paragraph shall require any operator to pay any benefits for any months prior to January 1, 1974.
 
 
 11
 (b) The Secretary of Labor, after consultation with the Secretary of Health, Education, and Welfare, may issue such regulations as are necessary or appropriate to carry out the purpose of this section.
 
 
 12
 The claim of Givens was filed during the transition period. Givens established his eligibility for benefits under part B. The Director argues that it was error to direct that benefits be paid by the Secretary of Labor after December 31, 1973. He makes two alternative arguments: first, that ORC is responsible for benefit payments beginning January 1, 1974; second, if the coal operator-employer is not liable, the Secretary of Labor has no secondary or contingent liability.
 
 
 13
 The purpose of § 925 is clearly stated to assure "uninterrupted receipt of benefits" by claimants during the time that administration of the black lung program is changing from the Social Security Administration to either state workmen's compensation boards or the Department of Labor. The question for decision is whether a claimant who would be ineligible for benefits if he filed under part C, but who files under part B during the transition period, is nevertheless entitled to receive benefit payments from the Secretary of Labor after December 31, 1973.
 
 
 14
 The BRB determined that the employer, ORC, could not be held liable for payment of benefits to Givens because at the time his application was filed more than three years had elapsed since his last exposure to coal dust. This holding was based on a requirement of 30 U.S.C. § 932(f)(2) (1970 Supp. II), which provides:
 
 
 15
 (2) Any claim for benefits under this section in the case of a living miner filed on the basis of eligibility under section 921(c)(4) of this title, shall be filed within three years from the date of last exposed employment in a coal mine or, in the case of death from a respiratory or pulmonary impairment for which benefits would be payable under section 921(c)(4) of this title, incurred as the result of employment in a coal mine, shall be filed within fifteen years from the date of last exposed employment in a coal mine.
 
 
 16
 Under § 925(a)(5) an operator who has been properly notified is bound by the determination "on such claim as if the claim had been filed pursuant to part C . . . and section 932 . . . had been applicable to such operator." (emphasis added). In effect the BRB held that the words "as if" incorporated all provisions of part C and particularly the limitation on liability of operators contained in § 932(f)(2). This construction is consistent with the legislative plan, as disclosed by the language of the Act and the legislative history, to limit employer liability to payments due after December 31, 1973 and to claims arising from exposure within three years where based on the rebuttable presumption of § 921(c)(4). Nothing in the statutory language indicates an intention to transfer liability for benefit payments to an employer as of January 1, 1974 on a claim filed during the transition period which would have been barred if filed on or after January 1, 1974. This conclusion finds support in the opinion of the Supreme Court in Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). There the Court held that the "as if" provision of § 925(a)(5) affords an operator the same opportunity to rebut the presumption established by § 921(c)(4) whether a claim based thereon is filed in the transition period or is actually filed pursuant to part C after December 31, 1973. Id. at 36, 96 S.Ct. 2882. This indicates that an operator may assert every defense available under part C even though a claim is filed during the transition period.
 
 
 17
 The BRB correctly held that the Secretary of Labor was liable for the payment of benefits to Givens until December 31, 1973, and that liability for payment did not shift to ORC after that date. We conclude, however, that the continuing liability of the Secretary of Labor after December 31, 1973 did not arise under part C. The BRB based its determination of liability beginning January 1, 1974 on 30 U.S.C. § 934 (1970 Supp. II), which provides:
 
 
 18
 If a totally disabled miner or a widow, child, parent, brother, or sister is entitled to benefits under section 932 of this title and (1) an operator liable for such benefits has not obtained a policy or contract of insurance, or qualified as a self-insurer, as required by section 933 of this title, or such operator has not paid such benefits within a reasonable time, or (2) there is no operator who was required to secure the payment of such benefits, the Secretary shall pay such miner or such widow, child, parent, brother, or sister the benefits to which he or she is so entitled. In a case referred to in clause (1), the operator shall be liable to the United States in a civil action in an amount equal to the amount paid to such miner or his widow, child, parent, brother, or sister under this subchapter.
 
 
 19
 The only provision for federal liability under part C is made contingent upon the existence of the conditions set forth in § 934. The BRB found that the condition of clause (2) of § 934 was satisfied because there was no operator who was required to pay the benefits. However, this holding overlooks the pre-condition for federal liability under § 934 that "a totally disabled miner . . . is entitled to benefits under section 932 . . . ." To be entitled to benefits under section 932, a claim based on the rebuttable presumption of § 921(c)(4) must be filed within three years of the miner's last exposure. § 932(f)(2). Since Givens did not file his claim within three years of his last exposure he is not a totally disabled miner "entitled to benefits under § 932."
 
 
 20
 This does not dispose of the matter, however. The 1972 amendments were intended to liberalize treatment of black lung claims. Givens was eligible for federal benefits under part B. The opening language of § 925 is "(n) otwithstanding any other provision of this subchapter (IV) . . . ." It then provides for determination of claims filed during the transition period, and "where appropriate under this part (part B) or section 934 of this title, benefits shall be paid with respect to such claim by the Secretary of Labor." (emphasis added). This appears to be an appropriate claim for payment by the Secretary of Labor under part B throughout the claimant's period of disability.
 
 
 21
 Senate Report No. 92-743 refers to "an injustice of the worst kind" which would result where a disabled miner who filed under the 1969 Act on December 31, 1971 would be eligible for lifetime benefits, while one who filed on January 1, 1972 would be paid only for one year by the federal government, with payments thereafter dependent on the response of the states. 2 U.S.Code Cong. & Admin.News (1972) at 2325. One of the purposes of the 1972 amendments was to eliminate such injustices. If Givens had filed his claim on June 30, 1973 rather than August 14, under the determination of the hearing officer he would have been eligible for lifetime benefits; yet the Director argues that his benefits should terminate on December 31, 1973. Although § 924(b) limits payments under part B to the period ending December 31, 1973 for claims filed after June 30, 1973, we conclude that Congress did not intend one in the position of Givens to be paid for a few months only. This claimant was one of the very group of superannuated coal miners who were intended to be benefited by part B "(n)otwithstanding any other provision . . . ." § 925(a). The purpose of § 925 is to provide a procedure for the orderly transfer of responsibility for administering the black lung program. There is no indication of an intention to cut off federal payments for a claim established under part B when it does not meet the requirements of part C. That would be the result if the position of the Director were adopted.
 
 
 22
 Our conclusions with respect to No. 76-1343 make it unnecessary to decide the questions presented in No. 76-1079. The petitions for review are denied. Costs will be paid by the petitioner in each case.